In the Matter of Estate of John Stephan, Deceased, Samuel Stephan, Norman Stephan, Stephan C. Grant, Harry S. Grant and U. S. Grant, v. Harry M. Gerhart and Ephrata National Bank, as Executors and Trustees of the Last Will and Testament of Mary Stephan, Deceased, and Vera Garman, as Executrix of the Last Will and Testament of John Stephan.

194 So. 343
Division B
Opinion Filed February 27, 1940
Rehearing Denied March 19, 1940

*Jesse Grantham, George W. English, Jr., J. H. Lathero,* for Appellants;

*Wiseheart & Wiseheart,* for Appellees.

Whitfield, J.—The last will and testament provides :"I

give, devise and bequeath to my wife, Mary Stephan, all my property, real, personal and mixed, of what nature and kind soever, I may die possessed of, she to receive the rents, incomes and profits thereof, for and during the term of her life, and at her death, I hereby order and direct that all money due from John B. Garman from papers held by me, I give, devise and bequeath to John B. Garman and Savilla Garman, their heirs and assigns forever."

Under the statute, Section 24 of the 1933 Probate Act, Ch. 16103, Acts of 1933, Section 5480(1) C. G. L. Perm. Supp.,

"The real and personal property of an intestate shall descend * * *

"1. To the surviving spouse and lineal descendants, the surviving spouse taking the same as if he or she were one of the children.

"2. If there be no lineal descendants, to the surviving spouse."

A testator may be intestate as to all of his estate or as to a part thereof. The statute of descents applies to any property of a decedent not lawfully disposed of by will or otherwise as provided by law.

In this case the residue of testator's estate, after the wife's life estate, was not disposed of by will except the specific·bequest to the Garmans; and as to such estate as remained after the wife's life estate, except that bequest to the Garmans, was intestate property which at testator's death passed under the statute of descents to his widow as his heir, he leaving no lineal descendants.

Under the Massachusetts statute of descents the surviving widow took the whole estate of the decedent husband only "if the deceased leaves no issue and no kindred * * *." Title II, Chapter 190, Section 1 (3), General Laws of

Massachusetts (Tercentenary Edition, 1932). Under the Florida statute of descents the surviving spouse takes the decedent husband's entire estate if there are no lineal descents of the deceased husband. In Bragg v. Litchfield, *et al.*, 212 Mass. 148, 98 N. E. 673, the residue of testator's estate was intended to be disposed of by the terms of the will, and the widow was not an heir at law of the testator while he had "kindred" as in that case.

Decree affirmed.

TERRELL, C. J., BUFORD and CHAPMAN, J. J., concur.

BROWN and THOMAS, J. J., dissent.

BROWN, J. (dissenting).—This is an appeal from an order of the Circuit Court affirming an order of the County Judge construing the provisions of a will.

Certain persons, as heirs at law of John Stephan, deceased, filed their amended petition in the County Judge's Court of Dade County, praying that the Court construe the last will and testament of John Stephan, deceased.

The amended petition contains the facts relied on, all of which were admitted by the answer except (1) the allegation that petitioners are heirs at law of John Stephan, deceased, about which the answer stated defendants were not advised, and (2) the allegation that Mary Stephan took only a life estate under the will of John Stephan, deceased, and that petitioners, as heirs at law of John Stephan, deceased, are entitled to the remainder after termination of the life estate to Mary Stephan, to which the answer stated that the petitioning heirs are not entitled to any property of deceased, under the laws of the State of Florida.

On October 4, 1919, John Stephan published his will, which contained the following provision:

"All the rest, residue and remainder of my estate, real, personal and mixed, of what nature and kind soever, I may

die possessed of, I give, devise and bequeath to my wife, Mary A. Stephan, to her heirs and assigns forever."

Subsequently, on July 28, 1933, John Stephan published his last will and testament, the principal clause of which was as follows:

"I give, devise and bequeath to my wife, Mary Stephan, all my property, real, personal and mixed, of what nature and kind soever, I may die possessed of, she to receive the rents, incomes and profits thereof, for and during the term of her life, and at her death, I hereby order and direct that all money due from John B. Garman from papers held by me, I give, devise and bequeath to John B. Garman and Savilla Garman, their heirs and assigns forever."

John Stephan died March 9, 1934, in Ephrata Borough, Lancaster County, Pennsylvania. He left surviving him a widow, but no children. His estate consisted in the main of improved real estate in the City of Miami. After his death, the first will was duly probated in Pennsylvania and Florida. Subsequently the second will was found, probate of the first will was revoked, the second will was duly probated in Pennsylvania and Florida, and Vera Garman appointed Executrix in Pennsylvania and Ancillary Executrix in Florida. Before discovery of the second will, Mary Stephan, widow of John Stephan, died, leaving a last will and testament in which she gave the residue of her estate, in trust, for the benefit of Camp Silver Bell for the perpetual care and upkeep of the Stephan Spiritualists Memorial located on the grounds of the Ephrata Park Association, with other gifts over in case of dissolution.

The County Judge entered his order construing the will of John Stephan which, after reciting the facts, contained the following:

"By the Will, the testator, except for the disposition of

the Garman debt, has failed to indicate what shall be done with the residue of his estate after the death of his wife, and as to such residue it must therefore be concluded that he died intestate; the residue of said estate should therefore pass to the widow's estate in accordance with the laws of descent and distribution of this State and it is,

"Therefore, ordered and adjudged that the Ancillary Executrix herein, as quickly as convenient, file her final report and turn over all of the assets of this estate to the Executors of the Estate of Mary Stephan, deceased, upon their properly qualifying before this Court."

The Circuit Court, on appeal, entered its order, without opinion, affirming the order of the County Judge.

From this latter order, the appeal here was taken.

The question to be determined is whether under the last will and testament of John Stephan, where there were no children and testator failed to make any disposition of the residue of his estate after a life estate to his widow, and the widow died before accepting the provisions of the will or dissenting therefrom, the undisposed residue passed to the widow and gave her a fee simple therein?

Section 35 of Chapter 16,103, being the Probate Act of 1933, Sec. 5507 (1) C. G. L. Perm. Supp. gives a widow the right to dissent from the provisions of a will if she does not wish to take thereunder. Section 36 of the Probate Act of 1933, Sec. 5507 (2) C. G. L. Perm. Supp., requires the widow to file with the County Judge, in writing, acknowledged, signed and sworn to, her election to take dower within nine months after first publication of notice to creditors. Unless she elects in this manner she takes under the will, or under the law of descents and distributions where there is no will. Her right of dower does not become vested until she files her election in accordance

with the statute, Sec. 5507 (2) C. G. L., and dower is assigned to her. Redfearn on Wills and Administration of Estates in Florida, 394. The fact that the second will had not been found and had not be admitted to probate at the time of the widow's death, there being no fraud connected with this delay, does not make any difference, because the right to elect is personal to the widow. First National Bank of St. Petersburg v. MacDonald, 100 Fla. 675, 130 So. 596; 9 R. C. L. 604, Sec. 44. This right of election is strictly a personal one, which can be exercised by the widow alone (or by a court of equity for her when she is insane, as in the MacDonald case, *supra*) and expires with her death, even though her death occurs before the expiration of the time for election. Furthermore, the estate being free from debts, and there being no children, it does not appear that it would have been to the advantage of the widow to elect to take dower had she had the opportunity to exercise such election. See 17 Am. Jur. 709, Sec. 54; Flynn v. McDermott, 183 N. Y. 62, 75 N. E. 931, 2 L. R. A. (N. S.) 959, 111 A. S. R. 687, 5 Ann. Cas. 81; Crozier's Appeal, 90 Pa. 384, 35 Am. Rep. 666; Donald v. Portis, 42 Ala. 29; Annotations 85 A. L. R. 856. Here the wife was by the will given the entire estate for and during her life. There is no suggestion that the provision thus made for the wife was unjust or inequitable.

The purpose of a testator in making a will is to dispose of his property according to his choice, and to avoid the provisions of the statutes of descent and distribution. See Cuthbert v. Laing, 75 N. H. 304, 75 Atl. 641; Coon v. Coon, 187 Ind. 478, 118 N. E. 820; Purdy's Adm'r v. Evans, 156 Ky. S. W. 1071.

In the construction of a will, the intention of the testator, as therein expressed, shall prevail over all other considerations, if consistent with the principles of law. To this

great rule in the exposition of wills, all others must bend. Brown v. Harris, 90 Fla. 540, 106 So. 412; Cole v. Cole, 88 Fla. 347, 103 So. 78; Rewis v. Rewis, 79 Fla. 126, 84 So. 93.

The authorities are apparently in conflict as to whether a will giving a life estate in certain property to a person without disposing of the remainder vests a fee in the life tenant, or whether it simply vests a life estate in that person, and the remainder reverts to the estate of the testator as intestate property.

The following cases are cited in 69 C. J. 546, Sec. 1624 as holding that the absence of a limitation over indicates that the first taker is to have an absolute estate, although it is expressly limited for life. Grant v. Mullen, 15 Del. Ch. 174, 138 Atl. 613; State v. Warrington, 4 Del. 55; Dailey v. Kunkel, 82 Ind. App. 590, 147 N. E. 166; Jameson v. Best, 124 Kan. 633, 261 Pac. 582; Kirk's Executor, 167 Ky. 69, 179 S. E. 1065; Chambers v. Shaw, 52 Mich. 18, 17 N. W. 223; *In re* McClelland's Estate (Mo.) 257 S. W. 808; Casper v. Walker, 33 N. J. Eq. 35; *In re* Moehring, 154 N. Y. 423, 27 N. Y. Civ. Proc. 70, 48 N. E. 818; Rood v. Watson, 54 Hun. 85, 7 N. Y. S. 212; Davis v. Corwine, 25 Ohio St. 668; Drennen's Appeal, 118 Pa. 176, 12 Atl. 348; *In re* Brownfield's Estate, 8 Watts 465; Browns' Appeal, 10 Pa. Cas. 555, 14 Atl. 130; Graham v. Gamber, 95 Pa. Super. 187; Cannedy v. Jones, 19 S. C. 297, 45 Am. Rep. 777; Garrett v. Garrett, 20 S. C. Eq. 96; Green v. Young, 163 Tenn. 16, 40 S. W. (2d) 793.

The reasons for the rule adopted by this line of authorities are (1) that the testator presumably intended to dispose of his entire estate, and, while it is not essential to the creation of a life estate in the first taker for the testator to dispose of the remainder, it is usual and customary, and his failure to do so is a circumstance tending to neg-

ative the theory that he intended to create a life estate; and (2) where the construction of a will is doubtful the law leans in favor of the primary rather than the secondary intent, and in favor of the first rather than the second taker as the principal object of the testator's bounty, and this presumption may be relied on to support the claim that the gift is absolute rather than a life estate.

This rule that a gift or devise of property to one for life without a gift or devise over passes the whole estate is a rule of construction to aid in discovering the testator's intention, and is not a rule of law. See *In re* Roger's Estate, 245 Pa. 206, 91 Atl. 351, L. R. A. 1917A 168.

The following authorities hold that a life estate only will be given in the absence of a remainder over, where the terms of the will clearly show that a life estate was intended. Roberts v. Cleveland, 222 Ala. 256, 132 So. 314; Wilder v. Loehr, 211 Ala. 651, 101 So. 591; Evans' Appeal, 51 Conn. 435; Sheldon v. Rose, 41 Conn. 371; Doyal v. Smith, 28 Ga. 262; Railsback v. Gordon, 28 Ind. App. 97, N. E. 99; Horak v. Stanley, 216 Ia. 318, 249 N. W. 166; Harvey v. Clayton, 206 Ia. 197, 220 N. W. 25; Jones v. Clyman, 193 Ia. 1248, 188 N. W. 954; Griley v. Cassell, 144 Ia. 685, 123 N. W. 348; Varney v. Stevens, 22 Me. 331; Pattison v. Farley, 130 Md. 408, 100 Atl. 634; Cavan v. Woodbury, 240 Mass. 125, 133 N. E. 95; Boston Safe Deposit, etc., So. v. Buffum, 186 Mass. 242, 71 N. E. 549; Mixter v. Woodcock, 147 Mass. 613, 18 N. E. 573; Nickerson v. Bowly, 8 Metc. 424; Marguder v. Stewart's Adm'rs., 5 Miss. 204; Deats v. Ziegener, 82 N. J. Eq. 605, 89 Atl. 31; Matter of Hoyt's Estate, 71 Hun. 13, 24 N. Y. S. 577; *In re* Kingsley, 145 N. Y. S. 662; McKinley v. Scott, 49 N. C. 197; *In re* McCullough's Estate, 272 Pa. 509, 116 Atl. 477; Shaner v. Wilson, 207 Pa. 550, 56 Atl. 1086, 9 Prob. Rep. Ann. 134; *In re* Nevin's Estate, 192

Pa. 258, 43 Atl. 996; *In re* Reynolds' Estate, 175 Pa. 257, 34 Atl. 624; *In re* Ritter's Estate, 148 Pa. 577, 24 Atl. 120; *In re* Brown's Estate, 38 Pa. 289; Jenison v. Jenison, 51 R. I. 388, 155 Atl. 246; Lawrence v. Burnett, 109 S. C. 416, 96 S. E. 144; Geiger v. Brown, 21 S. C. Eq. 359 note; Haring v. Shelton (Tex. Civ. App.), 114 S. W. 389, affirmed in 103 Tex. 10, 122 S. W. 13; Bartlett v. Patton, 33 W. Va. 71, 10 S. E. 21, 5 L. R. A. 523.

The language of the second will in this case plainly restricts the bequest of the wife to that of a life estate. The intention of the testator in this regard, is, however, made unmistakable when the second will is compared with the first. Here we have before us two wills. In the first, John Stephan, the testator, devised the *residue* of his property to his "wife, Mary A. Stephan, to her heirs and assigns forever." In the second will he omitted any mention of the *"heirs and assigns"* of Mary Stephan, and devised *all* of his property to her "to receive the rents, incomes and profits thereof, for and during the term of her life." This change evinced a clear intention on the part of John Stephan, the testator (who had collateral heirs of his own blood), to exclude the heirs and likewise the legatees and devisees, of Mary Stephan from participating in or enjoying any of his property. The omission from the second will of the words "her heirs and assigns" also indicated that the testator intended to remove from his will any words that would vest in his widow fee simple title to the property. The testator effectually limited his widow, Mary Stephan, to a life estate, because, in the second will, he restricted her to the use of the *rents, incomes and profits* from his estate *during the term of her life,* and gave her no authority or control over the corpus of the estate. Therefore, we conclude that the widow, Mary A. Stephan, took only a life estate under this will.

But it is contended that since the will gave the widow a life estate in all the property of the testator, and the testator failed to dispose of the residue, other than the gift to the Garmans, he died intestate as to that part of his estate, which should be distributed under the law of descent and distribution, Section 24, of the Probate Act of 1933, and there being no children, the widow as sole heir took the fee. To give the will this effect would defeat the plain intent of the testator as expressed in the will, which, as we have seen, was to bequeath to her a life estate only.

Furthermore, this contention is challenged by appellants because Section 24 of the Probate Act of 1933, Section 5480 (1) C. G. L., unlike in language to that used in Section 3618 R. G. S., provides that "the real and personal property of an *intestate* shall descend and be distributed as follows:" (Emphasis supplied).

The former statute, Section 3618 R. G. S., 5483 C. G. L., which was repealed by Section 198 of the 1933 Probate Act, began as follows: "Whenever any person having title to real estate of inheritance shall die intestate as to such estate, it shall descend," etc.

It has been held that *an intestate* is one who died without leaving a will; Brown v. Mugway, 15 N. J. L. 330; one who died without leaving a valid will; *In re* Cameron's Estate, 47 App. Div. 120, 62 N. Y. S. 187; *In re* Noble's Estate, 194 Ia. 733, 190 N. W. 511, 26 A. L. R. 86; and one who did not dispose of his property by last will and testament, Kohn v. Dunbar, 21 Ida. 258, 121 Pac. 544, 39 L. R. A. (N. S.) 1107, Ann. Cas. 1913D 492. It has also been held that a person is not *an intestate* who dies leaving a will although he disposes of only part of his estate therein. Thompson v. Carmichael, (N. Y.) 3 Sandf. Ch. 120; Kent v. Hopkins, 83 Hun. 611, 33 N. Y. S. 767. Therefore, in view of these definitions, appellants contend that a person

cannot be said to be *an intestate* when he dies leaving a valid will disposing of all of his property, regardless of the fact that later, after the termination of an estate for life created by the will, an undisposed of remainder reverts to the estate as intestate property. They contend that John Stephan did not die intestate as to any of his property; that an intestacy existed as to part of it only after the termination of a life estate to his widow, which life estate was created by his last will and testament, and that Section 24 of the Probate Act of 1933, Section 5480 (1) C. G. L., which provides how and to whom the property "of an intestate" shall descend, does not relate to *intestate property,* such as we have here, but only to the property of *an intestate.* That therefore it can have no application here, as John Stephan was not *an intestate.*

The foregoing presents a very plausible contention, with which the writer is inclined to agree, but it is one that we do not deem it necessary to pass upon. Our view is that a will is made to avoid the effect of the statute of descent and distribution; that any right which the wife may otherwise have had as an heir-at-law to the estate was superseded by the provisions of the will, and was subordinate to decedent's testamentary disposition. By the will, the property of the estate, in so far as the wife was concerned, was taken out of the line of descent. Therefore, paragraph 2 of Section 24 of the Probate Act of 1933, which provides in effect that where there are no lineal descendants, the property of an intestate shall descend entirely to the surviving spouse, must be disregarded as inapplicable in this case. Otherwise the intent of the testator in making his will would be nullified.

When the life estate is completed, the remainder, not otherwise disposed of by testator's will, reverts to his estate as intestate property to be distributed to testator's heirs

at law. See Wright v. Singleton, 190 Ky. 657, 228 S. W. 39; Pattison v. Farley, 130 Md. 408, 100 Atl. 634; Rorak v. Stanley, 216 Ia. 318, 249 N. W. 166; Bragg v. Litchfield, 212 Mass. 148, 98 N. E. 673; Wilder v. Loehr, 211 Ala. 651, 101 So. 591.

In the case of Bragg v. Litchfield, 212 Mass. 148, 98 N. E. 673, the court had before it the question as to whether or not when a life estate to a widow had terminated and the remainder reverted to the testator's estate, the widow would also inherit as an heir at law of testator. The Court said in that case:

"The only question that remains is whether the widow shared in the intestate property as a statutory heir. A legacy or devise to one who is an heir at law or a statutory heir will not prevent him from taking as heir at law or as a statutory heir in case of a partial intestacy unless it is manifest from the whole will that there was intention to exclude him on the happening of such an event. Johnson v. Goss, 132 Mass. 274; Jones v. Gane, 205 Mass. 37; Walton v. Draper, 206 Mass. 20. In the present case we think that it appears from the will taken as a whole that the testator intended the provision which he made for his widow to be a full and final provision for her. He specifically bequeathed to her all his 'furniture, glass and silverware, books, pictures and articles of use and ornament.' Then he directed that she should have the rents, income, interests, dividends and profits from the rest and residue 'during her natural life, precisely the same as I myself might do, were I living'; and added to this 'full power to sell, exchange, invest and reinvest the same,' and in conclusion provided for the disposition of the rest and residue at her decease. The unavoidable inference from this is, we think that he intended that she should have the entire

use, benefit and improvement of the rest and residue during her life, and to that end clothed her with full power to manage the same as she should think best, but that he did not intend that she should have any part of the principal of the estate except the furniture, glass, etc., which he specifically bequeathed to her.

"The result is that that portion of the estate which is undisposed of will go to and be divided and distributed amongst the heirs at law of William Litchfield."

In spite of some statutory differences between that state and our own, I think the reasoning adopted in the Massachusetts case quoted above is sound and highly persuasive here. I think that the testator in this case clearly expressed his intention, by writing a second will, that his widow could inherit as an heir at law of testator after having enjoyed all of the estate to which she was entitled under the will, would, in effect, frustrate the intention of the testator, as expressed in his will, which will restricted the widow to a life estate only. Therefore, I conclude that the undisposed of remainder descended to the heirs at law of the testator, other than the wife, and not to the wife or the heirs at law of his wife, or her legatees, at her death. The life estate vested in her by the will, which was the only interest she had in the property, unless we go contrary to the intent of the will, terminated absolutely at her death, and there was therefore no interest or estate whatever in the property to descend from her to her heirs, or to be devised by her to others.

For these reasons I think the order of the Circuit Court affirming the order of the County Judge, should be reversed, and the cause remanded.

THOMAS, J., concurs.